Jordan and Ransom *v.* Maney.

E. L. JORDAN and M. RANSOM *v.* L. M. MANEY *et al.*

10L 135
12L 14
2pi 540

1. CHANCERY PLEADINGS AND PRACTICE. *Administration. Sale of land.* Under the Code, sec. 2267, *et sec.*, a bill may be filed by the creditors of a testator, after the exhaustion of personal assets, against the devisees under the testator's will to subject the realty devised to the satisfaction of their debts.

2. SUMMARY PLEADINGS. *Administrator. Surety.* In the case of sureties a motion lies both for and against the personal representative of deceased parties.

3. SAME. *Same. Same. Quere,* whether a judgment by motion in favor of a surety against executors to be levied *de bonis testatoris* is good, where the notice and judgment both describe the plaintiff as the surety of the executors, and not of the testator.

4. ADMINISTRATION. *Sureties of testator. Evidence.* The claim of a surety of the testator, although primarily based upon a summary judgment, will be sustained by proof of the claim itself, if the bill be filed in time.

5. SAME. *Admission of assets. Estoppel. Plene administravit.* A judgment by default upon motion against executors is not such an admission of personal assets as will estop the judgment creditor from showing the truth, that there were no such assets, as against the heir, nor is any judgment where the executors refused to plead *plene administravit* for the purpose of defeating the creditor.

6. ADVERSE POSSESSION. *Gift of land.* In order to clothe children with a possessory right to land, under the statute of limitations, into the possession of which they had been put by their parent, it must be shown that there was an actual gift, and a continuous adverse holding for the required period without break or recognition of the parent's title, and there can be no adverse holding under a father's will which only takes effect at his death.

---

FROM RUTHERFORD.

---

Appeal from the Chancery Court at Murfreesboro. A. S. MARKS, Ch.

E. H. Ewing and L. Jordan for complainants.

E. D. Hancock and J. W. Burton for defendants.

Cooper, J.; delivered the opinion of the court.

The bill is filed by the complainants as creditors of Dr. James Maney, deceased, against his executors, heirs and devisees, to reach for the satisfaction of their debts the lands of the deceased devised by his will, upon the ground that the personal assets of the estate had been exhausted in the payments of debts. The chancellor was of opinion, and so decreed, that in October, 1857, and theretofore, James Maney, the testator, had in his lifetime, by parol gift, placed his children in the possession of the lands in controversy, that they had held such possession themselves, and by their families and tenants, from that time until the filing of the bill, continuously and adversely, and that they were protected to the extent of their actual enclosures, but no further, and he made a reference to the master to ascertain the land to which a possessory title had been thus acquired. The complainants appealed.

James Maney died in the summer of 1872, having previously on June 6, 1866, made and published his last will, which was duly proved and recorded after his death. His two sons, L. M. and D. D. Maney, who were appointed by the will executors without the necessity of giving security, qualified as such accordingly, on December 3, 1872. The son-in-law, E. A. Keeble, was also appointed an executor, but he died in A - gust, 1868.

The bill was filed September 16, 1875, and as amended falls within the purview of the act of 1827, brought into the Code, sec. 2267, *et seq.* The complainant, Ransom, claims by judgment recovered against L. M. and D. D. Maney as executors, upon the finding by a jury of the plea of *plene administravit* in their favor, and the return of an execution thereon *nulla bona.* The complainant, Jordan, also claims by judgment recovered against L. M. Maney individually, and L. M. and D. D. Maney as executors, upon motion and by default, and a return of execution *nulla bona.* The defendants demurred to the bill, assigning several causes of demurrer, none of which are now insisted upon, or could be after the amendment of the bill, except one. It is suggested, rather than argued, that the act of 1827 does not authorize proceedings under it against devisees. But the statute expressly provides that when an "executor" or administrator has exhausted the personal assets, any *bona fide* creditor may file the bill or petition, and that the suit shall be conducted as other suits in equity: Code, secs. 2267, 2269. And the rules and practice of a court of equity, as well as the uniform decisions of this court under the act, require that all persons having title or interest in the lands sought to be reached should be made parties: *Dulles* v. *Read,* 6 Yer., 53; *Estes* v. *Johnson,* 10 Hum., 223.

The claim of complainant Jordan is also objected to upon the ground that a motion will not lie against personal representatives. But the statute expressly provides in the case of sureties that the motion will lie

Jordan and Ransom *v.* Maney.

"both for and against the personal representatives of deceased parties": Code, sec. 3626. And the motion in which the judgment in question was recovered was made by the complainant Jordan as the surety of the defendant L. M. Maney and the decedent James Maney. It is further said that the judgment is void for want of a sufficient recital of facts necessary to sustain it. And it must be admitted that the proceedings are deficient in clearness and accuracy of statement. Both the notice on which the motion was made and the judgment itself seem to say that the complainant was the surety of the executors, and there may be some doubt whether executors can bind their testator's estate by a note merely executed by them as executors. The addition of the word "executors" would perhaps be only a *descriptio personœ.* In point of fact, as the record shows, the complainant was the surety of L. M. Maney and James Maney, and a judgment was, on July 14, 1874, recovered by the holder of the note against him, L. M. Maney, and the executors of James Maney, deceased. This bill was filed, as stated above, on September 16, 1875, and therefore in time if the complainant is compelled to stand upon the original cause of action. In this view, it becomes unnecessary to decide the point made by the defendants, that a recovery of judgment against a personal representative, without the finding of the plea *plene administravit* in his favor, would be an admission of assets which would protect the realty. But this would clearly not be the law where that course was resorted to for the purpose of thereby defeating the creditor. The executors in

this case, who qualified without giving security for the performance of their duties, admit their individual insolvency at the date of the return of *nulla bona* on the execution, and one of them proves that only about $300 of personal assets came to their hands, which they had already exhausted in the payment of debts. And they refused to plead fully administered to the motion, although their attention was called to the point, saying that the creditor must take his own course. Under our present statute law, moreover, it is doubtful whether any form of judgment against the personal representative would estop the judgment creditor to show the truth against the heir, and it is certain that a judgment by default upon motion would not: *Henry* v. *Mills*, 1 Lea, 144, 148.

The defense on the merits is the statute of limitations. The chancellor found the statute a protection to the possessory right under a parol gift of the land by the testator to his children. The defendants all joined in filing a single answer to the bill, and the possession therein claimed is not altogether consistent. They do insist generally upon an alleged parol gift in the year 1857, and previously to that date. But they also say that at the time of the division of lands in 1857, "the testator made a will giving to his daughter and to his daughters-in-law the property just as it is given" in the will exhibited with the bill; and that owing to the results of the late war, and the death of his daughter, he, by the will exhibited, made such changes only as were proper under the circumstances. And the argument made on behalf of the

defendants sought to establish title to the property in controversy in accordance with the terms of the will, and not under the parol gift. The reason for this line of argument will appear upon a review of the facts.

The testator, Dr. James Maney, was in the year 1857 a man of wealth, the owner of large bodies of land, slaves and personal property in this State, and in the State of Mississippi. His wife died in August, 1857, and he then concluded to break up housekeeping, and live with his children, all of whom were married and had families. He had two sons, L. M. and D. D. Maney, and one daughter, Mary, the wife of E. A. Keeble. He had put all of them in possession of portions of his lands before that date.. He had a life interest as tenant by the curtesy, in a tract of land of 160 acres lying near the town of Murfreesboro, which his wife had inherited from her father, and the fee in over 600 acres of adjoining land, as well as other lands in the county, and lots in the town. On September 21, 1857, L. M. Maney, D. D. Maney and E. A. Keeble and wife, joined in executing a deed conveying to Dr. Maney their remainder interest in the tract of land of 160 acres, in consideration, as recited therein, of five dollars paid to each of them, "and for the further consideration of enabling him, the said Dr. Maney, to make suitable family arrangements and settlements, and to dispose of his said lands as he thinks proper and best." In the month of October of that year, Dr. Maney caused the land near Murfreesboro, including the 160 acres, to be surveyed

and laid off into three parcels, numbered 1, 2 and 3. Across the first of these were written the words: "Maj. Lewis Maney's tract, 214 acres;" across the second: Col. E. A. Keeble's tract, 264 acres;" across the third: "David Maney's tract, 300 acres." Under the plat, the surveyor wrote and signed the following statement: "I surveyed the above described tract of land for Dr. James Maney, and divided it into three distinct tracts: 1st, Lewis Maney has 214 acres; 2d, E. A. Keeble has 264 acres; and 3d, David Maney has 300 acres, making in all 778 acres." It is stated in the bill that the plat was registered, but whether upon any and what probate does not appear, nor is it perhaps material. The plat is not signed by Dr. Maney, nor is it an instrument falling within the registration laws.

The testator put his sons and son-in-law in possession of the parcels of land thus allotted to them. He had previously placed them in possession of other portions of his realty. He reserved the title in all these cases, and made no formal gift, so far as appears, in any case by parol. The possession thus acquired was continued by the sons and son-in-law and their families, except as to such of the lands as were conveyed away by the testator in his lifetime, and except also with a break or hiatus of a year or two during the war, until the filing of the bill. In 1858, the 300 acres of the home place designated in the plat as D. D. Maney's seems to have been sold by him, and conveyed by the father. Dr. Maney perhaps made to her conveyances of portions of the land, and, during

the war and shortly afterwards, leased and rented other parcels. But after his wife's death, he lived with his children, principally before the war with his daughter, who died in April or May, 1863, and after this with his son, L. M. Maney.

There is proof tending to show that shortly after the survey and division mentioned the testator made a will, but it does not appear what its provisions were. On June 6, 1866, he made the will probated after his death. It was written by D. D. Maney, as he himself testifies. The will starts out by saying that the testator makes the following disposition of the goods and possessions with which Providence had blessed him, and directs that all of his debts be promptly paid by his executors. He then undertakes to dispose of the realty in controversy as his property, being the lands then in the possession of his sons and son-in-law remaining unconveyed by him. He gives one part of the land, specifically described, to Mary L. Maney, the wife of D. D. Maney, for life, and after her death to her children by D. D. Maney. He gives another part to Adeline Maney, the wife of L. M. Maney, for life, and after her death to her children by L. M. Maney. He gives another part to the children of Mary L. Keeble, she having died. In each of these devises, the son or daughter is charged, by way of advancement, with the value of property, except slaves, previously given to, and used by them respectively, so as to render the shares of the sons and of the children of the daughter nearly equal. He directs the lands in the State of Mississippi to be sold by his

executors, and the proceeds, "together with any other funds coming into their hands" belonging to him, to be equally divided between his sons and the children of his daughter. The will contains one or two other provisions not necessary to be noticed.

The will was written by one of the sons, and its contents were known at the time to the other son, as he testifies. Both of these sons say the subsequent holding of the lands, after the execution of the will, of themselves and families was in accordance with its terms. On July 2, 1870, the testator conveyed to his grandson, James M. Keeble, one half of the tract of land marked on the plat of 1857 as E. A. Keeble's tract. On the 11th of March, 1871, the testator conveyed some of the other lands placed in the possession of D. D. Maney, at the instance of his sons, to a trustee to secure debts of D. D. Maney, on which the testator and L. M. Maney were sureties. On May 31, 1872, the testator conveyed a part of the tract allotted to L. M. Maney to the town of Murfreesboro as a cemetery. In September, 1872, the testator applied by petition to the general government for compensation on account of injury done these lands by the federal armies during the civil war, claiming the lands as belonging to him.

The chancellor's decree goes upon the theory that the testator had in 1857, and prior thereto, made parol gifts of his land to his children, and that these children and their families had acquired a possessory right to the several parcels held by them respectively under the gift by a continuous adverse holding of seven years

under the Code, sec. 2765. But the answer of the defendants admits that after the division in 1857, the testator made a will devising the lands in the possession of his sons and son-in-law to his daughter and daughters in law, and their children, in substantial accord with the will afterwards made in 1866. It is very true there is no proof of the contents of this will. But the admission by the defendants that there was a will disposing of the land in controversy is, of course, inconsistent with the idea that the father had previously made a gift of the lands to his children, and consequently that there was ever any adverse holding. Moreover, the break in the actual possession of the children during the war prevented the running of the statute of limitations, and the suspension of the statute from the 6th of May, 1861, to the 1st of July, 1867, precludes all operation of the statute prior to the latter date. The sons recognized the title of their father to the lands devised by the will by their participation and knowledge of its execution, subsequent holding in accordance with its terms, and qualifying and acting under the will. The other defendants have no title except under the will, for they do not claim that the testator at any time by parol, or otherwise, gave the land to them directly in any other way. And it need scarcely be said that a holding under, or in accordance with the terms of a will, which only takes effect at the death of the testator, could never be adverse to his rights.

A father may, no doubt, make a parol gift of land to a child, and the holding of the child may be ad-

Jordan and Ransom *v.* Maney.

verse to the father for the length of time necessary to vest him with a possessory right under the statute: *Haynes* v. *Jones,* 2 Head, 372. But proof of the gift must be clear, and the holding plainly and unmistakably adverse and continuous to work such a result. A parent may play the part of King Lear in private life if he choose to do so, but the intent will never be implied. The testator in this case was in the habit of putting his children in possession of portions of his property, and allowing them to use it as their own. After his wife's death, he was manifestly willing to surrender to them the possession and enjoyment of a large portion of his lands. But he reserved the title, and by specific acts in relation to the property, and by making wills disposing of it, with the knowledge of his children, he plainly shows that he considered himself as still the absolute owner. And the evidence demonstrates that the children and their families recognized his title at all times. They expected to have the use of the property into the possession of which they were put during his life, and to obtain the absolute title at his death, "as he might think proper and best." The conveyance to him by the children of the tract of 160 acres was to enable him to dispose thereof, as of his other lands, at the same time, namely at the termination of his life estate by his death. There is not the slightest evidence, on the face of the instrument or otherwise, of a different intent, or contract.

The record does not show that an account of the administration of the personal assets was taken. There

was an order for an account, but it seems never to have been acted on. One of the executors files a sworn inventory showing that personal assets, of the value of about $300 only, came to their hands, and the same executor proves that they were exhausted in the payment of debts. Neither the inventory, nor the testimony is conclusive on the devisees, and they are entitled to have the account taken before the sale of the land.

This decision will be without prejudice to the rights of the devisees to have the real assets marshalled as between themselves, upon a bill filed for the purpose, if they should be so advised. Such a bill would not interfere with the rights of the creditors to subject the realty to the satisfaction of their debts under this bill.

The chancellor's decree will be reversed, and a decree rendered here declaring the rights of the parties in accordance with this opinion, and ordering the proper accounts to show exhaustion of the personal assets. The cause will be remanded to the chancery court for the purpose of executing the decree. The costs of this court will be paid by the defendants, and eventually, together with the other costs of the cause, charged on the realty.